**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC.; TWENTIETH CENTURY FOX FILM CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; SONY PICTURES TELEVISION INC.; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC; and DISNEY ENTERPRISES, INC., <br><br> Plaintiffs <br><br> v. <br><br> JOHN DOE 1 a/k/a WANG WEI d/b/a DVDSEA.COM; JOHN DOE 2 a/k/a BILL UREY d/b/a CHEAPDVDMART.COM; JOHN DOE 3 a/k/a JOY SENCHY d/b/a DVDS-HOME.NET; JOHN DOE 4 a/k/a OLYES CHEY d/b/a IDVDSET.COM; JOHN DOE 5 a/k/a DVDSHOP AU d/b/a DVDSHOPAU.COM; JOHN DOE 6 a/k/a ECWARDS L d/b/a ENTERTAINWHO.COM; JOHN DOE 7 a/k/a CAILYNA K d/b/a TVSTOREDVD.COM; JOHN DOE 8 d/b/a BOXSETSALES.COM; XYZ COMPANIES 1-100 and JOHN AND JANE DOES 9-100. <br><br> Defendants. | CIVIL ACTION NO. 14-CV_____ <br><br> COMPLAINT <br><br> **[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116]** |

Plaintiffs WARNER BROS. ENTERTAINMENT INC., TWENTIETH CENTURY FOX FILM CORPORATION, COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES TELEVISION INC., UNIVERSAL CITY STUDIOS LLC, UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC, and DISNEY ENTERPRISES, INC. (collectively, "Plaintiffs") hereby file this Complaint for *inter alia* trademark counterfeiting, trademark infringement, unfair competition and copyright infringement against JOHN DOE 1 a/k/a WANG WEI d/b/a

DVDSEA.COM, JOHN DOE 2 a/k/a BILL UREY d/b/a CHEAPDVDMART.COM, JOHN

DOE 3 a/k/a JOY SENCHY d/b/a DVDS-HOME.NET, JOHN DOE 4 a/k/a OLYES CHEY

d/b/a IDVDSET.COM, JOHN DOE 5 a/k/a DVDSHOP AU d/b/a DVDSHOPAU.COM, JOHN

DOE 6 a/k/a ECWARDS L d/b/a ENTERTAINWHO.COM, JOHN DOE 7 a/k/a CAILYNA K

d/b/a TVSTOREDVD.COM, JOHN DOE 8 d/b/a BOXSETSALES.COM, as well as XYZ

COMPANIES 1-100 and JOHN and JANE DOES 9-100 (collectively, "Defendants"), on

personal knowledge as to Plaintiffs' own activities and on information and belief as to the

activities of others:

## NATURE OF THE CASE

1.      Plaintiffs bring this action to stop the rampant sale of counterfeit DVDs and Blu-

ray discs featuring their movies and television shows.  This egregious infringement of Plaintiffs'

intellectual property rights is being perpetrated by an Internet counterfeiting ring originating

from China.  Plaintiffs comprise many of the world's leading motion picture studios, which

develop, produce, distribute and own or control rights to numerous motion pictures and

television programs.  So that consumers can enjoy their motion picture and television program

content for home and personal entertainment, Plaintiffs distribute their copyrighted works

through pre-recorded DVDs and Blu-ray discs (and box sets thereof).  To capitalize on and profit

from this market, Defendants unlawfully manufacture DVDs and Blu-ray discs (and box sets

thereof) that are illegal reproductions of Plaintiffs' genuine products bearing counterfeits and

infringements of Plaintiffs' trademarks and trade names (the "Infringing Products").  They then

use a variety of online channels to advertise, promote, market, offer for sale, sell and ultimately

distribute those Infringing Products to consumers in the United States and throughout the world;

these online channels include a network of websites resolving at various domain names set forth

below, which -- in order to deceive consumers -- are designed to look like legitimate web stores (collectively referred to as the "Infringing Websites").

2. Defendants, knowing that their activities are illegal and to evade detection and reduce risk, have concealed their identities and used false business names and incomplete identification information in connection with their offering for sale and sale of the Infringing Products. Defendants communicate with potential customers via the Infringing Websites and/or by email without revealing their true identities.

3. To halt Defendants' illegal activities, Plaintiffs bring this action for trademark counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(b); trademark infringement arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a); unfair competition and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and copyright infringement under the Copyright Act, 17 U.S.C. § 501 *et seq.*

4. Plaintiffs seek, *inter alia*, *ex parte* relief for a temporary restraining order, order to disable certain websites, asset restraining order, expedited discovery; preliminary and permanent injunctions; an award of actual or statutory damages; treble damages or profits; pre-judgment interest; attorneys' fees and costs; and investigators' fees and costs, and any other relief the Court may deem proper, pursuant to 15 U.S.C. § 1117, *et seq.* and 17 U.S.C. § 503, *et seq.*

## THE PARTIES

5. Each of the Plaintiffs and/or their affiliates are among the leading motion picture and television studios in the world and are responsible for creating and distributing some of the world's most popular filmed entertainment. Plaintiffs expend significant sums in creating, promoting and marketing their motion pictures and television programs, including substantial expenditures in securing and protecting Plaintiffs' intellectual property rights.

6.     Plaintiff WARNER BROS. ENTERTAINMENT INC. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 4000 Warner Boulevard, Burbank, California 91522 ("WBEI").

7.     Plaintiff TWENTIETH CENTURY FOX FILM CORPORATION is a corporation organized and existing under the laws of Delaware, having its principal place of business at 10201 West Pico Boulevard, Los Angeles, California 90035 ("Fox").

8.     Plaintiff COLUMBIA PICTURES INDUSTRIES, INC. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 10202 West Washington Boulevard, Culver City, CA 90232 ("CPII").

9.     Plaintiff SONY PICTURES TELEVISION INC. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 10202 West Washington Boulevard, Culver City, CA 90232 ("SPT").

10.     Plaintiff UNIVERSAL CITY STUDIOS LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 100 Universal City Plaza, Universal City, California 91608.

11.     Plaintiff UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 100 Universal City Plaza, Universal City, California 91608 (collectively with Universal City Studios LLC, "Universal").

12.     Plaintiff DISNEY ENTERPRISES, INC. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 500 South Buena Vista Street, Burbank, California 91521 ("DEI").

13.     Upon information and belief, Defendant JOHN DOE 1 a/k/a WANG WEI, d/b/a

DVDSEA.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's e-mail addresses include, but are not limited to, servies[*sic*]@dvdsea.com and service@dvdsea.com.  This defendant operates at least one Infringing Website at the dvdsea.com Uniform Resource Locator (URL).

14.     Upon information and belief, Defendant JOHN DOE 2 a/k/a BILL UREY, d/b/a CHEAPDVDMART.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include, but are not limited to, fxxkingthegfwall@gmail.com and cheapdvdmart@outlook.com.  This defendant operates at least one Infringing Website at the cheapdvdmart.com URL.

15.     Upon information and belief, Defendant JOHN DOE 3 a/k/a JOY SENCHY, d/b/a DVDS-HOME.NET is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown, and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include, but are not limited to, service@dvds-home.net and dvdshome123@hotmail.com.  This defendant operates at least one Infringing Website at the dvds-home.net URL.

16.     Upon information and belief, Defendant JOHN DOE 4 a/k/a OLYES CHEY, d/b/a IDVDSET.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown, and who, at all relevant times herein, has been engaged in

the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include, but are not limited to, coker@gmail.com and idvdset123@outlook.com.  This defendant operates at least one Infringing Website at the idvdset.com URL.

17.     Upon information and belief, Defendant JOHN DOE 5 a/k/a DVDSHOP AU, d/b/a DVDSHOPAU.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown, and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include, but are not limited to, dvdshopau@hotmail.com and dvdshopau@live.com.  This defendant operates at least one Infringing Website at the dvdshopau.com URL.

18.     Upon information and belief, Defendant JOHN DOE 6 a/k/a ECWARDS L, d/b/a ENTERTAINWHO.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown, and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include, but are not limited to, wanglinjing99@gmail.com and service@entertainwho.com.  This defendant operates at least one Infringing Website at the entertainwho.com URL.

19.     Upon information and belief, Defendant JOHN DOE 7 a/k/a CAILYNA K, d/b/a TVSTOREDVD.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown, and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States.  This defendant's email addresses include,

DWT 22396888v25 0067328-000009

but are not limited to, service@tvstoredvd.com and service@tvstoreau.com.  This defendant operates at least one Infringing Website at the tvstoredvd.com URL.

20.     Upon information and belief, Defendant JOHN DOE 8, d/b/a BOXSETSALES.COM is a business or an individual whose actual name is currently unconfirmed and true address is currently unknown and hidden by a privacy protection service, and who, at all relevant times herein, has been engaged in the distribution, offer for sale and/or sale of Infringing Products in this judicial district and elsewhere throughout the United States. This defendant's email address includes, but is not limited to csydvd@gmail.com.  This defendant operates at least one Infringing Website at the boxsetsales.com URL.

21.     Upon information and belief, Defendants operate under false names and are one or more persons located in China and acting in conjunction with one another and other Defendant John and Jane Does and XYZ Companies whose identities and numbers are not presently known.

## JURISDICTION AND VENUE

22.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.

23.     Personal jurisdiction is proper over all Defendants pursuant to New York C.P.L.R. §§ 302(a)(1), (a)(3)(i) and/or (a)(3)(ii) because the unlawful conduct complained of herein has caused, and continues to cause, injury to Plaintiffs within this District.  Defendants regularly conduct, solicit, and/or transact business in this District via their Infringing Websites, and have solicited consumers in this District; Defendants have accepted and fulfilled sales orders from consumers within this District; Defendants have offered to sell and have sold Infringing Products to consumers within this District; Defendants derive substantial revenue in interstate

and/or international commerce; and Defendants regularly and systematically direct electronic activity into the State of New York through their fully interactive Infringing Websites with the manifest intent of engaging in business within this District.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) in that the Defendants are entities or individuals subject to personal jurisdiction in this District and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims arose in this District.

**BACKGROUND FACTS**

**WBEI's Trademarks and Copyrights**

25.    WBEI is a well-known entertainment company that is engaged in, *inter alia*, feature film and television production and distribution, including the manufacture, sale and distribution of DVDs and Blu-ray discs containing its feature films and television programs (the "WBEI Products").  WBEI Products are distributed through a worldwide network of its affiliated companies, authorized licensees, distributors and retailers, including online retailers.

26.    WBEI is the owner of the entire right, title and interest in and to, *inter alia*, the valid and subsisting WARNER BROS, THE BIG BANG THEORY, GOSSIP GIRL, HARRY POTTER, THE MENTALIST, TWO AND A HALF MEN, and VAMPIRE DIARIES trademarks and service marks, as well as the design marks depicted below, as more fully described in **Exhibit A** hereto (the "WBEI Registered Marks"):



Many of the WBEI Registered Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

27.     WBEI also owns valid and subsisting common law rights in, *inter alia*, the WBEI Registered Marks as well as its trade names and/or other marks for use in connection with various types of goods and service – including for many of the trade names and marks, for use in connection with prerecorded media containing WBEI's motion pictures and television programs. These common law marks and trade names, together with the WBEI Registered Marks, are referred to, collectively, as the "WBEI Marks".

28.     To the extent WBEI Marks are registered, those registrations constitute prima facie evidence of the validity of those marks, conclusive evidence of WBEI's exclusive right to use the WBEI Marks in commerce and constructive notice to Defendants of WBEI's ownership and exclusive rights in the WBEI Marks.

29.     WBEI, its predecessors-in-interest, associated companies and authorized licensees have used one or more of the WBEI Marks since at least as early as 1939.

30.     The WBEI Marks have been widely promoted, both in the United States and throughout the world, resulting in significant sales of WBEI Products.  As such, the WBEI Marks have acquired secondary meaning and have been and are now recognized by the trade and public as belonging to WBEI exclusively.

31.     WBEI has not authorized Defendants to use the WBEI Marks.

32.     WBEI also owns or controls – either by itself or jointly with others – the copyrights and/or the relevant exclusive rights under United States copyright laws in numerous motion picture and television works, including for illustrative purposes those listed in **Exhibit B** hereto (the "WBEI Copyrights").  The copyrights for these works are registered with the United

States Copyright Office.

33.     WBEI, either on its own and/or in conjunction with its affiliates, controls the exclusive rights in the United States to, among other things, reproduce and distribute numerous motion picture and television program works, including the works that are the subject of the representative WBEI Copyrights set forth in **Exhibit B**, including by means of offering for sale, selling, and distributing the WBEI Products via United States and international mail, parcel service and over the Internet.

34.     Defendants have not received a license, authorization, permission or consent to reproduce or distribute any of WBEI's copyrighted works, including the works that are the subject of the WBEI Copyrights.

**Fox's Trademarks and Copyrights**

35.     Fox is a well-known entertainment company that is engaged in, *inter alia*, feature film and television production and distribution, including the manufacture, sale and distribution of DVDs and Blu-ray discs containing its motion pictures and television programs (the "Fox Products").  Fox Products are distributed through a worldwide network of authorized licensees, distributors and retailers, including online retailers.

36.     Fox is the owner of the entire right, title and interest in and to, *inter alia*, the valid and subsisting TWENTIETH CENTURY-FOX, AMERICAN HORROR STORY, FAMILY GUY, GLEE, HOMELAND, HOW I MET YOUR MOTHER, MODERN FAMILY, NIGHT AT THE MUSEUM, and THE SIMPSONS trademarks and design marks depicted below, as more fully described in **Exhibit A** hereto (the "Fox Registered Marks"):

 

 

Many of the Fox Registered Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

37.     Fox also owns valid and subsisting common law rights in, *inter alia*, the Fox Registered Marks as well as its trade names and/or other marks for use in connection with various types of goods and services – including, for many of the trade name and marks, for use in connection with prerecorded media containing Fox's motion picture and television programs. These common law marks and trade names, together with the Fox Registered Marks, are referred to, collectively, as the "Fox Marks".

38.     To the extent Fox Marks are registered, those registrations constitute prima facie evidence of the validity of those marks, conclusive evidence of Fox's exclusive right to use the Fox Marks in commerce and constructive notice to Defendants of Fox's ownership and exclusive rights in the Fox Marks.

39.     Fox, its predecessors-in-interest, associated companies, and/or authorized

licensees have used one or more of the Fox Marks since at least as early as 1936.

40.     The Fox Marks have been widely promoted, both in the United States and throughout the world, resulting in significant sales of Fox Products.  As such, the Fox Marks have acquired secondary meaning and have been and are now recognized by the trade and public as belonging to Fox exclusively.

41.     Fox has not authorized Defendants to use the Fox Marks.

42.     Fox also owns or controls the copyrights and/or the relevant exclusive rights under United States copyright laws in numerous motion picture and television program works, including for illustrative purposes those listed in **Exhibit B** hereto (the "Fox Copyrights").  The copyrights for these works are registered with the United States Copyright Office.

43.     Fox also owns or controls the exclusive rights in the United States to, among other things, reproduce and distribute numerous motion picture and television program works, including the works that are the subject of the representative Fox Copyrights set forth in **Exhibit B**, including by means of offering for sale, selling, and distributing the Fox Products via United States and international mail, parcel service and over the Internet.

44.     Defendants have not received a license, authorization, permission or consent to reproduce or distribute any of Fox's copyrighted works, including the works that are the subject of the Fox Copyrights.

**CPII and SPT Trademarks and Copyrights**

45.     CPII and SPT are well-known entertainment companies that are engaged, on their own and through affiliated companies, in, *inter alia*, feature film and television production and distribution, including the manufacture, sale and distribution of DVDs and Blu-ray discs containing their motion pictures and television programs (the "CPII/SPT Products").  CPII/SPT

Products are distributed through a worldwide network of authorized licensees, distributors and retailers, including online retailers.

46.     CPII and SPT are, respectively, the owners of the entire right, title and interest in and to, *inter alia*, the valid and subsisting COLUMBIA PICTURES, MEN IN BLACK, BREAKING BAD, DAMAGES and DROP DEAD DIVA trademarks and the design mark depicted below, as more fully described in **Exhibit A** hereto (the "CPII/SPT Marks"):



Many of the CPII/SPT Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

47.     Because the CPII/SPT Marks are registered, those registrations constitute prima facie evidence of the validity of those marks, conclusive evidence of CPII and SPT's exclusive rights to use, respectively, the CPII/SPT Marks in commerce and constructive notice to Defendants of CPII and SPT's ownership and exclusive rights in the CPII/SPT Marks.

48.     CPII and SPT, their predecessors-in-interest, associated companies, and authorized licensees have used one or more of the CPII/SPT Marks since at least as early as 1961.

49.     The CPII/SPT Marks have been widely promoted, both in the United States and throughout the world, resulting in significant sales of CPII/SPT Products.  As such, the CPII/SPT Marks have acquired secondary meaning and have been and are now recognized by the trade and public as belonging to CPII and/or SPT exclusively.

50.     CPII and SPT have not authorized Defendants to use the CPII/SPT Marks.

51.     CPII or SPT also owns or controls the copyrights and/or the relevant exclusive rights under United States copyright laws in numerous motion pictures and television program works, including for illustrative purposes those listed in **Exhibit B** hereto (the "CPII/SPT Copyrights").  The copyrights for these works are registered with the United States Copyright Office.

52.     CPII and SPT, either on their own and/or in conjunction with their affiliates and/or exclusive licensees, control the exclusive rights in the United States to, among other things, reproduce and distribute numerous motion picture and television program works, including the works that are the subject of the representative CPII/SPT Copyrights set forth in **Exhibit B**, including by means of offering for sale, selling, and distributing the CPII/SPT Products via United States and international mail, parcel service and over the Internet.

53.     Defendants have not received a license, authorization, permission or consent to reproduce or distribute any of CPII or SPT's copyrighted works, including the works that are the subject of the CPII/SPI Copyrights.

**Universal's Trademarks and Copyrights**

54.     Universal is a well-known entertainment company that is engaged, on its own and through affiliated companies, in, *inter alia*, feature film and television production and distribution, including the manufacture, sale and distribution of DVDs and Blu-ray discs containing its motion pictures and television programs (the "Universal Products").  Universal Products are distributed through a worldwide network of authorized licensees, distributors and retailers, including online retailers.

55.     Universal is the owner of the entire right, title and interest in and to, *inter alia*, the

valid and subsisting UNIVERSAL, LAW & ORDER, and LAW & ORDER: SPECIAL

VICTIMS UNIT trademarks and service marks and the design mark depicted below, as more

fully described in **Exhibit A** hereto (the "Universal Registered Marks"):



Many of the Universal Registered Marks have become incontestable under Section 15 of the

Lanham Act, 15 U.S.C. § 1065.

56.     Universal also owns valid and subsisting common law rights in, *inter alia*, the

Universal Registered Marks and other marks, including THE FAST AND THE FURIOUS, and

its trade names for use in connection with various types of goods and services – including for

many of the trade names and marks, for use in connection with prerecorded media containing

Universal's motion pictures and television programs.  These common law marks and trade

names, together with the Universal Registered Marks, are referred to, collectively, as the

"Universal Marks".

57.     To the extent Universal Marks are registered, those registrations constitute prima

facie evidence of the validity of those marks, conclusive evidence of Universal's exclusive right

to use the Universal Marks in commerce and constructive notice to Defendants of Universal's

ownership and exclusive rights in the Universal Marks.

58.     Universal, its predecessors-in-interest, associated companies, and authorized

licensees have used one or more of the Universal Marks since at least as early as 1912.

59.     The Universal Marks have been widely promoted, both in the United States and

throughout the world, resulting in significant sales of Universal Products.  As such, the Universal

Marks have acquired secondary meaning and have been and are now recognized by the trade and

public as belonging to Universal exclusively.

60.     Universal has not authorized Defendants to use the Universal Marks.

61.     Universal also owns or controls – either by itself or jointly with others – the

copyrights and/or the relevant exclusive rights under United States copyright laws in numerous

motion picture and television program works, including for illustrative purposes those listed in

**Exhibit B** hereto (the "Universal Copyrights").  The copyrights for these works are registered

with the United States Copyright Office.

62.     Universal, either on its own and/or in conjunction with its affiliates, controls the

exclusive rights in the United States to, among other things, reproduce and distribute numerous

motion picture and television program works, including the works that are the subject of the

representative Universal Copyrights set forth in **Exhibit B**, including by means of offering for

sale, selling, and distributing the Universal Products via United States and international mail,

parcel service and over the Internet.

63.     Defendants have not received a license, authorization, permission or consent to

reproduce or distribute any of Universal's copyrighted works, including the works that are the

subject of the Universal Copyrights.

**DEI Trademarks and Copyrights**

64.     DEI is a well-known entertainment company that is engaged, along with its

associated companies, in, *inter alia*, feature film and television production and distribution,

including, the manufacture, sale and distribution of DVDs and Blu-ray discs containing its

motion pictures and television programs (the "DEI Products").  DEI Products are distributed

through a worldwide network of authorized licensees, distributors and retailers, including online retailers.

65.     DEI is the owner of the entire right, title and interest in and to, *inter alia*, the valid and subsisting WALT DISNEY, DISNEY, BUENA VISTA HOME ENTERTAINMENT, BAMBI, DISNEY'S BEAUTY AND THE BEAST, THE LION KING, DISNEY PIXAR BRAVE, PETER PAN, PIRATES OF THE CARIBBEAN, DISNEY TANGLED, and WINNIE THE POOH trademarks, service marks, and design marks depicted below, as more fully described in **Exhibit A** hereto (the "DEI Registered Marks"):



Many of the DEI Registered Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

66.     DEI also owns valid and subsisting common law rights in, *inter alia*, the DEI Registered Marks as well as its trade names and/or other marks for use in connection with various types of goods and services – including for many of the trade names and marks, for use in connection with prerecorded media containing DEI's motion pictures and television programs. These common law marks and trade names, together with the DEI Registered Marks, are referred to, collectively, as the "DEI Marks".

67.     To the extent DEI Marks are registered, those registrations constitute prima facie evidence of the validity of those marks, conclusive evidence of DEI's exclusive right to use the DEI Marks in commerce and constructive notice to Defendants of DEI's ownership and

exclusive rights in the DEI Marks.

68.     DEI, its predecessors-in-interest, associated companies and authorized licensees have used one or more of the DEI Marks since at least as early as 1933.

69.     The DEI Marks have been widely promoted, both in the United States and throughout the world, resulting in significant sales of DEI Products.  As such, the DEI Marks have acquired secondary meaning and have been and are now recognized by the trade and public as belonging to DEI exclusively.

70.     DEI has not authorized Defendants to use the DEI Marks.

71.     DEI also owns or controls the copyrights and/or the relevant exclusive rights under United States copyright laws in numerous motion picture and television program works, including for illustrative purposes those listed in **Exhibit B** hereto (the "DEI Copyrights").  The copyrights for these works are registered with the United States Copyright Office.

72.     DEI controls the exclusive rights in the United States to, among other things, reproduce and distribute numerous motion picture and television program works, including the works that are the subject of the representative DEI Copyrights set forth in **Exhibit B**, including by means of offering for sale, selling, and distributing the DEI Products via United States and international mail, parcel service and over the Internet.

73.     Defendants have not received a license, authorization, permission or consent to reproduce or distribute any of DEI's copyrighted works, including the works that are the subject of the DEI Copyrights.

74.     The WBEI Marks, Fox Marks, CPII/SPT Marks, Universal Marks, and DEI Marks, are collectively referred to herein as "Plaintiffs' Marks" and are more fully described in **Exhibit A** hereto.

75. The WBEI Copyrights, Fox Copyrights, CPII/SPT Copyrights, Universal Copyrights, and DEI Copyrights are collectively referred to herein as the "Plaintiffs' Copyrights" and are more fully described in **Exhibit B** hereto.

76. The genuine WBEI Products, Fox Products, CPII/SPT Products, Universal Products, and DEI Products are collectively referred to herein as "Plaintiffs' Products."

## DEFENDANTS' ILLEGAL CONDUCT

77. Defendants, acting together, operate a network of Infringing Websites originating from China – including those at the Dvdsea.com, Cheapdvdmart.com, Dvds-home.net, Idvdset.com, Dvdshopau.com, Entertainwho.com, Tvstoredvd.com, and Boxsetsales.com domains – to market, offer for sale, sell and/or distribute the Infringing Products, specifically counterfeit and pirated DVDs, Blu-ray discs, and box sets thereof of Plaintiffs' well-known and highly-popular movies and television series.

78. The Infringing Websites are likely being operated by a single source as demonstrated by similar website-design layout, language, pictures, IP addresses, ISPs, registrars, payment provider information, return addresses on packaging, and/or arbitrary product-label irregularities.

79. Defendants, without any license, authorization, permission or consent from Plaintiffs, have reproduced Plaintiffs' copyrighted works, including the representative copyrights set forth in **Exhibit B** and manufactured, imported, distributed, advertised, offered for sale and/or sold Infringing Products featuring Plaintiffs' Copyrights and continue to do so.

80. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' Marks in connection with the distribution, advertisement, offer for sale and sale of the Infringing Products through the Internet.

DWT 22396888v25 0067328-000009

Specifically, Defendants, without any authorization, permission or consent from Plaintiffs, have used Plaintiffs' Marks on the packaging of, and within the content embodied on, the counterfeit and infringing DVD and Blu-ray discs (and box sets thereof) sold on Defendants' websites.

81.     In order to deceive consumers into buying the Infringing Products, Defendants have designed the Infringing Websites to resemble legitimate retail Internet stores targeted to the United States.  The Infringing Websites are written in English, accept payment in U.S. dollars and allow payment through PayPal and/or major credit cards.  Defendants' Infringing Websites include sophisticated graphics of Plaintiffs' motion pictures and television programs, use the titles of Plaintiffs' motion picture and television program works (including many that are subject to federal trademark registrations), offer live online support services including live chat, and display normal indicia of consumer security protection such as published terms and conditions and privacy and security policies to further appear as legitimate web stores.

82.     The Infringing Products are not genuine Plaintiffs' Products and Defendants are in no way authorized by Plaintiffs to sell the Infringing Products or to operate the Infringing Websites.  Plaintiffs did not manufacture, inspect or package the Infringing Products and did not approve the Infringing Products for sale or distribution.  The packaging and content of the Infringing Products are so similar in appearance to (and in fact, are replicas of) genuine Plaintiffs' Products that consumers are being deceived, just as Defendants intend, into believing the Infringing Products are genuine.

83.     Defendants' use of Plaintiffs' Marks on or in connection with the packaging, advertising, marketing, distribution, importing, offering for sale and sale of the Infringing Products, and in conjunction with the Infringing Websites is likely to cause and has caused confusion, mistake and deception by and among consumers and is causing irreparable harm to

Plaintiffs, Plaintiffs' Marks, and Plaintiffs' Copyrights.

84.     Plaintiffs have invested (and continue to invest) substantial sums of money and

effort each year to develop, produce, exhibit, advertise, and distribute (including through DVDs

and Blu-ray discs for home and personal entertainment) their motion pictures and television

programs, which are protected under copyright, trademark, and other laws.  Defendants' illegal

actions, as described herein, infringe upon Plaintiffs' exclusive copyright and trademark rights

and deprive Plaintiffs of the economic value of those rights and Plaintiffs' goodwill.

## COUNT ONE

## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114)

85.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

86.     Plaintiffs' Marks and the goodwill of the businesses associated with them in the

United States and throughout the world are of great and incalculable value, are highly distinctive,

and have become universally associated in the public mind with Plaintiffs' Products and related

services of the very highest quality and reputation finding their source from Plaintiffs.

87.     Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs'

well-known and prior rights in the Plaintiffs' Marks, Defendants have manufactured, distributed,

imported, advertised, offered for sale and/or sold the Infringing Products to the consuming public

in direct competition with Plaintiffs' sale of genuine Plaintiffs' Products.

88.     Defendants' use of copies or simulations of Plaintiffs' Marks in conjunction with

Defendants' Infringing Websites and the Infringing Products is likely to cause and is causing

confusion, mistake and deception among the general purchasing public as to the origin of the

Infringing Products, and is likely to deceive the public into believing the Infringing Products

being sold by Defendants originate from, are associated with or are otherwise authorized by

Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

89.     Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their respective goodwill and reputations.

90.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks to Plaintiffs' great and irreparable injury.

91.     Defendants are causing and are likely to cause substantial injury to the public and to Plaintiffs and Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, treble damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT TWO

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

92.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

93.     The Infringing Products sold and offered for sale by Defendants are of the same nature and type as Plaintiffs' Products and, as such, Defendants' use of Plaintiffs' Marks is likely to cause confusion to the general public.

94.     By misappropriating and using Plaintiffs' Marks and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Products and create a likelihood of confusion by consumers and others as to the source of such merchandise.

95.     Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, importing, advertising, offer for sale and/or sale of the Infringing Products creates express and implied misrepresentations that the Infringing Products were created, authorized or approved by Plaintiffs, all to Defendants' profit and to Plaintiffs' great damage and injury.

DWT 22396888v25 0067328-000009

96.     Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiffs' Marks, in connection with Defendants' goods, in commerce, constitutes a false designation of origin and unfair competition.

97.     Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation, and to the goodwill and reputation of Plaintiffs' Marks.

98.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks.

99.     Defendants are causing and are likely to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, treble damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT THREE

## COPYRIGHT INFRINGEMENT

100.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

101.    Through their conduct averred herein, Defendants have infringed Plaintiffs' copyrights by reproducing and distributing copies of Plaintiffs' copyrighted works, including Plaintiffs' Copyrights, without any authorization, permission or consent from Plaintiffs, in violation of 17 U.S.C. §§ 106(1) and (3) and 501.

102.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

103.    As a direct and proximate result of Defendants' infringement of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to damages and Defendants' profits

pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, which are not currently ascertainable.

104.     Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 for each of Plaintiffs' copyrighted works that Defendants have infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

105.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

106.     As a direct and proximate result of Defendants' acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' exclusive rights in Plaintiffs' Copyrights.  Plaintiffs are entitled to preliminary and permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     That Defendants, their officers, agents, servants, and employees and any persons in active concert or participation with them be permanently enjoined and restrained from:

     a.   using Plaintiffs' Marks or any reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' Marks in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of Plaintiffs; and

     b.   passing off, inducing or enabling others to sell or pass off any Infringing Products as and for Plaintiffs' Products; and

     c.   directly or indirectly infringing any of Plaintiffs' exclusive rights in Plaintiffs'

24

Copyrights for motion pictures and television programs, whether now in existence or later created, including without limitation by copying, distributing, offering for sale or selling (via the Internet or through other means) any copies of Plaintiffs' copyrighted works, except pursuant to a lawful license or with the express authority of Plaintiffs; and

d.   committing any acts calculated to cause purchasers to believe that Defendants' products are those sold under the control and supervision of Plaintiffs, or sponsored by or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiffs; and

e.   further infringing Plaintiffs' Marks, Plaintiffs' Copyrights and/or damaging Plaintiffs' goodwill; and

f.   otherwise competing unfairly with Plaintiffs in any manner; and

g.   shipping, delivering, holding for sale, copying, distributing, returning, transferring or otherwise moving, storing, or disposing of, in any manner, pre-recorded DVDs or Blu-ray discs, or box sets thereof, or other items falsely bearing Plaintiffs' Marks or any reproduction, counterfeit, copy, or colorable imitation of same, or reproducing or containing works protected by Plaintiffs' Copyrights (or any portions thereof); and

h.   operating and/or hosting Defendants' Infringing Websites.

2.   That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner in which Defendants have complied with Paragraph 1 of this Prayer for Relief, *supra*.

DWT 22396888v25 0067328-000009

3.     That Defendants' Infringing Websites and/or the corresponding domain names, or any subset of these domain names specified by Plaintiffs, be disabled by the appropriate domain name registries, including but not limited to VeriSign, Inc., Neustar, Inc., Afilias Limited, Nominet UK, and Public Interest Registry, and/or the individual registrars holding or listing one or more of the domain names used in conjunction with the Infringing Websites.

4.     That domain name registries, including but not limited to VeriSign, Inc., Neustar, Inc., Afilias Limited, Nominet UK, and Public Interest Registry, and/or the individual registrars holding or listing one or more of the domain names used in conjunction with the Infringing Websites, be required to transfer the domain names associated with Defendants' Infringing Websites, or any subset of these domain names specified by Plaintiffs, to a registrar to be appointed by Plaintiffs to re-register the domain names in respective Plaintiffs' names and under Plaintiffs' respective ownership.

5.     Ordering that third party service providers providing services to Defendants in connection with any of the Infringing Websites and/or domain names for the Infringing Websites – including without limitation web hosting providers, back-end service providers, web designers, shippers, search-based online advertising services (such as through paid inclusion, paid search results, sponsored search results, sponsored links, and Internet keyword advertising) and any banks, savings and loan associations, merchant account providers, payment processors and providers, credit card associations, or other financial institutions, including without limitation, PayPal, Inc. ("PayPal") – and who receive actual notice of the Order, cease or disable providing such services to i) Defendants in relation to the Infringing Products; and ii) any and all of the Infringing Websites.

6.     That Defendants, their officers, agents, servants, and employees and any persons

in active concert or participation with them be restrained from moving, destroying, or otherwise

disposing of any items, merchandise or documents relating to the Infringing Products, Defendants'

Infringing Websites, and/or Defendants' assets and operations; and/or from removing, destroying

or otherwise disposing of any computer files, electronic files, business records, or documents

relating to Defendants' Infringing Websites, Defendants' assets and operations or relating in any

way to the distribution, offer for sale and/or sale of Infringing Products or any reproduction,

counterfeit, copy or colorable imitation of Plaintiffs' Marks or any infringement of Plaintiffs'

Copyrights;

   7.  Restricting the transfer of Defendants' assets as ordered by the Court.

   8.  That Defendants and their officers, servants, employees, agents and any persons

in active concert or participation with them, and any banks, savings and loan associations,

merchant account providers, payment processors and providers, credit card associations, or other

financial institutions, including without limitation, PayPal, for any Defendant, any of Defendants'

operations, Defendants' Infringing Websites, or for any other website owned or controlled by

Defendants, who receive actual notice of the Order, shall immediately locate all accounts

connected to such Defendants and/or to the Infringing Websites, and that such accounts be

temporarily restrained and enjoined from transferring or disposing of any money or other of

Defendants' assets, not allowing such funds to be transferred or withdrawn.

   9.  That Plaintiffs be awarded their damages as well as profits realized by Defendants

by reason of Defendants' unlawful acts herein alleged and, that the amount of damages for

infringement of Plaintiffs' Marks be increased by a sum not exceeding three times the amount

thereof as provided by law.

   10.  In the alternative, that Plaintiffs be awarded statutory damages of $2,000,000 for

each of Plaintiffs' Marks counterfeited by each Defendant, and maximum statutory damages in the amount of $150,000 for each of Plaintiffs' copyrighted works that Defendants have infringed or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

11.    That Plaintiffs be awarded their costs, reasonable attorneys' fees, and investigators' fees incurred in this action.

12.    That Plaintiffs be awarded pre-judgment interest on their judgment.

13.    That Plaintiffs have such other and further relief as the Court may deem equitable, proper and just.

DWT 22396888v25 0067328-000009

Dated: New York, New York
May 14, 2014

Respectfully submitted,

By: _____

DAVIS WRIGHT TREMAINE LLP
G. Roxanne Elings
(RoxanneElings@dwt.com)
Lisa D. Keith
(LisaKeith@dwt.com)
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

James D. Nguyen (*Pro Hac Vice Pending*)
(jimmynguyen@dwt.com)
Sean M. Sullivan (*Pro Hac Vice Pending*)
(seansullivan@dwt.com)
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

MOTION PICTURE ASSOCIATION OF
AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice Pending*)
(karen_thorland@mpaa.org)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Telephone: (818) 935-5812

*Attorneys for Plaintiffs*